IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Esin E. Arakas, | ) | |
| | ) | Civil Action No. 4:17-cv-02338-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Esin E. Arakas ("Arakas"), brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the Commissioner's decision. (ECF No. 22).[1] In the Report, the magistrate judge sets forth the relevant facts and legal standards,

---

[1]    The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

which are incorporated herein by reference. Arakas filed objections to the Report (ECF No. 24), and the Commissioner responded to those objections (ECF No. 27). Accordingly, this matter is now ripe for review.

## BACKGROUND

On April 22, 2010, Arakas applied for DIB, alleging a disability onset date of November 11, 1996. (ECF No. 6-2 at 23). Her claim was denied both initially and on reconsideration by the Social Security Administration ("SSA"). *Id.* Arakas then requested a hearing before an Administrative Law Judge ("ALJ"), and on June 15, 2012, the ALJ conducted a hearing on Arakas's claims for DIB, where Arakas was represented by counsel. *Id.* At the hearing, the claimant amended her alleged onset date of disability to January 1, 2010. *Id.* On August 28, 2012, the ALJ issued an opinion finding that Arakas was not disabled. *Id.* at 23–33. Arakas subsequently appealed to the Appeals Council, and it denied Arakas's request for review. *Id.* at 2–6. Arakas filed an action with the District Court, and on September 23, 2015, Magistrate Judge Thomas Rogers reversed and remanded the case based on new evidence that was first presented to the Appeals Council.[2] (ECF No. 6-11 at 31–43). Upon receipt of Judge Roger's Order, the Appeals Council vacated the original ALJ decision and remanded the case to another ALJ for further

---

[2]      The parties consented to have a United States Magistrate Judge decide the initial case in 2014. *Arakas v. Colvin*, No. 4:14-00547-TMC-TER (D.S.C. Sept. 25, 2014) (Order Referring Civil action Pursuant to Consent).

proceedings and a new decision. (ECF No. 6-11 at 46).

On February 24, 2017, Arakas appeared at another hearing before an ALJ.[3]

(ECF No. 6-10 at 5). On June 6, 2017, the ALJ issued an unfavorable decision,

finding that Arakas was not disabled. *Id*. at 5 – 13. In that decision, the ALJ found

that Arakas met the insured status requirements under the Social Security Act

through December 31, 2014, and that Arakas had not engaged in any substantial

gainful activity during the period from her alleged onset date through her date of

last insured.[4] *Id.* at 7. The ALJ further found that Arakas suffered from severe

impairments of fibromyalgia and degenerative disc disease. *Id.* at 7. The ALJ

determined that Arakas's following impairments were not severe: carpal tunnel

syndrome; degenerative joint disease; and a mental impairment. *Id.* at 7 – 8. In

reviewing all of Arakas's impairments, the ALJ concluded that she did "not have

---

3       A separate ALJ was assigned to the case on remand.
4       The court notes that the ALJ stated that Arakas's alleged disability onset date was June 1,
2010, when Arakas has actually alleged a disability onset of January 1, 2010. *Compare* (ECF No.
6-10 at 7) *with* (ECF No. 6-5 at 23). Relying on the ALJ decision, the magistrate judge also cited
the onset date as June 1, 2010. (ECF No. 22 at 1). The court finds that such error was harmless.
"This type of oversight normally does not warrant a remand unless the claimant can prove the
ALJ's error caused her prejudice." *Trickey v. Colvin*, No. 1:13-cv-00124, 2014 WL 3529690, at
*8 (M.D. Tenn. July 15, 2014) (collecting cases). Here, neither Arakas nor Defendant has raised
this issue with the court. Additionally, it is clear from the record that the ALJ considered
evidence predating the true amended onset date, as indicated by his observations that Arakas had
not received various medications or treatments since 2007. (ECF No. 6-10 at 8, 11).
Furthermore, in determining that Arakas was not disabled, a large part of the ALJ's
determination focused on Arakas's daily activities, including her work activity beginning after
the amended onset date. Id. at 11 – 12). Because the onset date stated in the opinion was after the
true amended onset date, there was no error in considering these activities to be post-onset date
as the analysis would have remained the same. Accordingly, the court finds that citing the wrong
onset date was harmless error.

an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Id.* at 8. Additionally, the ALJ calculated Arakas's residual functional capacity ("RFC") and determined that she could perform light work with various limitations.[5] *Id.* at 9. Based on this RFC, the ALJ determined that Arakas is capable of performing her past relevant work as a dining room manager as actually and generally performed. *Id*. at 12. Accordingly, the ALJ determined that Arakas was not disabled as defined by the Act. *Id.* On August 31, 2017, Arakas filed this action. (ECF No. 1).

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus,

---

[5]    Specifically, the ALJ found that Arakas could not climb ladders; could not climb scaffolds; could occasionally climb ramps or stairs; could occasionally stoop, kneel, crouch, or crawl; could frequently balance; and should not be exposed to work hazards. (ECF No. 6-10 at 9).

in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

The magistrate judge filed a Report recommending that the decision of the Commissioner be affirmed. (ECF No. 22). Arakas timely filed objections to the Report. (ECF No. 24). The Commissioner replied to those objections and further argued that Arakas's objections were simply a reiteration of arguments already before the magistrate judge. (ECF No. 27). The matter is now ripe for review.

The court recognizes that Arakas's objections appear to largely be reiterations of the issues raised in her brief (ECF No. 14), and to extent that the objections are simply restatements of arguments already fully presented to the

magistrate judge for review, they do not constitute specific objections to the Report. *See Nichols v. Colvin*, No. 2:14-cv-50, 2015 UL 1185894, at *8 (E.D. Va. Mar. 13, 2015) (finding that the rehashing of arguments raised to the magistrate judge does not comply with the requirement to file specific objections); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as the term is used in this context."). However, Arakas's objections do contain several specific reasons that she disagrees with the magistrate judge's assessment of those claims. Accordingly, the court will consider the following objections: (1) that the magistrate judge erred in evaluating Arakas's fibromyalgia because the magistrate judge "focused on the absence of objective findings" and did not focus on the long-term effects; and (2) that the magistrate judge erred in evaluating Arakas's subjective complaints. (ECF No. 24).

As to Arakas's fibromyalgia, the magistrate judge determined that substantial evidence supported the ALJ's decision that her fibromyalgia caused some work limitations but was not disabling. (ECF No. 22 at 25–26). Arakas objects to this determination and states that the magistrate judge and ALJ erred in focusing on "the absence of objective findings" and in not considering the longitudinal record. (ECF No. 24 at 2–4). Pursuant to SSR 12-2p, the Social

Security Ruling on evaluation of fibromyalgia, claims for disability benefits based on a claim of fibromyalgia are evaluated using the same 5-step sequential evaluation process as other claims for disability. Furthermore, SSR 12-2p makes it clear that before a person with a medically determinable impairment of fibromyalgia can be deemed disabled, there must be "sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." However, 12-2p also recognizes the subjective nature of fibromyalgia symptoms, noting that, when possible, the court should consider a "longitudinal record . . . because symptoms of [fibromyalgia] can wax and wane so that person may have 'bad days and good days.'" SSR 12-2p; *see also Smith v. Colvin*, 1:14-cv-04400-RBH, 2016 WL 1089302, at *8 (D.S.C. Mar. 21, 2016) (finding that an ALJ's reliance exclusively on objective medical evidence "fail[ed] to account for the subjective nature of fibromyalgia" and stating that the longitudinal record should have been considered) (citing SSR 12-2p).

Here, nowhere in the ALJ's decision did he state that he evaluated Arakas's fibromyalgia based *solely* on the absence of objective evidence. In fact, when calculating her RFC, the ALJ specifically stated that he had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence *and other evidence*." (ECF No. 6-10

at 9) (emphasis added). In particular, the ALJ considered Arakas's testimony regarding her symptoms, opinion evidence from a medical consultant, and opinion evidence from Arakas's treating physician in addition to relying on the objective medical evidence. *Id.* at 9 – 12. Accordingly, Arakas's objection arguing that the ALJ relied solely on the objective evidence is without merit and is overruled.

Additionally, the court finds that the ALJ properly considered the longitudinal record that was before him in evaluating Arakas's fibromyalgia. In her objections, Arakas argues that the ALJ improperly considered "isolated notations" of periods when she responded to the medication well and that this did not account for the way that symptoms of fibromyalgia can wax and wane. (ECF No. 22 at 2 – 3). Arakas describes the periods when she responded positively to medication as "brief periods" that are likely to vary over time. *Id.* at 2. However, in considering Arakas's responses to medications over the years, the ALJ specifically noted that Arakas has not taken Loratab or any muscle relaxers for her pain *since 2011* and has since taken only Motrin or Ibuprofen. (ECF No. 6-10 at 10). The court concludes that this six-year period[6] cannot be considered an "isolated incident." Accordingly, this objection is overruled.

Furthermore, while the ALJ determined that Arakas's fibromyalgia was not

---

[6]    This six-year period being from 2011, when Arakas claims she stopped taking Loratab and muscle relaxers, until the date of the ALJ opinion in 2017. Even if considering only the time up until the date of last insured in 2014, the three-year stint in which Plaintiff did not require Loratab or muscle relaxers would similarly not be considered an isolated incident.

disabling, he did recognize that her fibromyalgia imposed various limitations on her ability to work, and he accounted for those in the RFC calculation. *Id.* at 12. To the extent Arakas is objecting to the ALJ's specific weighing of the evidence in assessing these limitations, the court notes that it "may not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its own] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the court overrules the objection.

Arakas also objects to the magistrate judge's assessment that the ALJ properly evaluated Arakas's subjective complaints. (ECF No. 22 at 22 – 24). As the magistrate judge determined (ECF No. 22 at 19), SSR 16-3p provides the proper basis for evaluating Arakas's subjective symptoms. From the objections, it does not appear that Arakas challenges the ALJ's determination at the first step in the evaluation, stating that she had a medically determinable impairment that could reasonably be expected to cause some of the alleged symptoms. Accordingly, the court will focus on the analysis at step two of the subjective symptom evaluation – the evaluation of the intensity and persistence of her symptoms and the extent to which those symptoms limit her ability to perform work-related activities. *See* SSR 16-3p.

In evaluating the intensity and persistence of an individual's symptoms and how that might affect her work limitations, the ALJ is charged with examining the

record as a whole, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." [7] SSR 16-3p.

In this case, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 6-10 at 10). In reaching this determination, the ALJ considered the objective medical evidence, notes from a treating physician, Arakas's statements regarding her symptoms, an opinion from a treating physician, and medical opinions from DDS medical consultants. *Id*. at 10 – 12

In her objections, Arakas argues that the magistrate judge did not consider the proper scope of her limited daily activities and, in doing so, failed to consider the "many qualifying statements regarding her daily activities." (ECF No. 24 at 4 – 5). Furthermore, Arakas claims that the magistrate judge did not address her claim

---

[7]  Additionally, SSR 12-2p lays out how to evaluate a claimant's statements regarding her symptoms and functional limitations when dealing with a medically determinable impairment of fibromyalgia and provides guidance as to what to consider when the objective medical evidence does not "substantiate the person's statements about the intensity, persistence, and functionally limiting effects of the symptoms." When this is the case, the court must consider all of the evidence in the record, "including the person's daily activities; medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p.

in her Brief and Reply that the ALJ essentially cherry-picked the evidence to support his decision. *Id.* at 6 (citing ECF Nos. 14 at 31–34; 18 at 7–8).

The court notes that it does appear that the magistrate judge cited to evidence in the ALJ's decision that supported the ALJ's ultimate determination and did not address the conflicting evidence therein. *See* (ECF No. 22 at 21). However, as noted previously, it is not the job of the magistrate judge, nor of this court, to reweigh the conflicting evidence that was before the ALJ. *Craig*, 76 F.3d at 589.

Furthermore, it does not appear that the ALJ cherry-picked the facts in this case. In assessing Arakas's subjective symptoms, the ALJ noted that Arakas claimed she had been helping work for her sister twice a week for four hours per day; that she states she has difficulty standing or sitting for long periods; that she goes outside and tries to walk during the day; that she has described her activities as using a computer, performing household chores, driving, shopping, walking for exercise, cooking, making her bed, doing laundry, doing yard work, and painting. (ECF No. 6-10 at 10 – 11). However, the ALJ also noted that Arakas claimed she was fatigued; that she was unable to mop; that her fatigue was an "overwhelming issue"; that she had difficulty with stairs; that she had numbness in her right fingers; that she had pain in her thighs, feet, back and neck; and that her condition had worsened since her last hearing. *Id.* at 10. Additionally,, the ALJ stated that

according to Arakas, she has not taken any Loratab or muscle relaxers for pain since 2011 and has relied on Motrin and Ibuprofen for relief. *Id.*

As to the medical evidence, the ALJ also discussed how examination notes of Arakas's rheumatologists consistently documented full range of motion of the joints and extremities "without any signs of active joint inflammation and discussed how Arakas responded to medication well. *Id.* at 10 – 11. However, as the ALJ stated, his notes also indicated multiple tender points. *Id.* at 11. While the rheumatologist opined that Arakas could not work on any sustained basis, the ALJ believed his assessment to be "based primarily on the claimant's subjective symptoms" and more attuned to a vocational opinion than a medical opinion. *Id.* at 11. Additionally, the ALJ determined that the fact that Arakas is currently working part time for her sister contradicted the rheumatologist's opinion that she could not work on any sustained basis. *Id.* at 12.

In evaluating this evidence, the ALJ found that Arakas's daily activities were inconsistent with her allegations of a disabling impairment and that her subjective symptoms were not completely consistent with the objective evidence. *Id.* Additionally, the ALJ noted that Arakas's activities of working part time as a cashier, using a computer, and reading all required a "certain degree of concentration." *Id.* Still, the ALJ considered that her fibromyalgia "could reasonably be expected to cause some discomfort," so he imposed certain

limitations in her RFC calculation to account for such discomfort. *Id.* Accordingly, it is clear that the ALJ considered facts both favorable and unfavorable to Arakas in evaluating her subjective symptoms and did not simply cherry-pick the record. Substantial evidence supports the ALJ's evaluation as to Arakas's subjective symptoms. The court will not reweigh the evidence, make its own credibility determinations, or supplant the ALJ's judgment with its own. *See Sharp v. Colvin*, 660 Fed. App'x 251, 259 (4th Cir. 2016). Accordingly, this objection is overruled.

## CONCLUSION

Having conducted the required *de novo* review of the issues to which Arakas has specifically objected, the court adopts the Report (ECF No. 22) for the reasons stated herein. The court finds that the Commissioner's findings were supported by substantial evidence and are without legal error. Accordingly, the Commissioner's final decision is **AFFIRMED.**

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
March 21, 2019